1

2

3

4                           UNITED STATES DISTRICT COURT

5                           EASTERN DISTRICT OF WASHINGTON

6   KEITH DOUGLASS, and PATRICIA K.
    DOUGLASS,
7                                               NO. CV-12-0609-JLQ

8          Plaintiffs,

9      vs.

10                                              **ORDER  GRANTING MOTIONS
    BANK OF AMERICA CORPORATION;                TO DISMISS; DIRECTING
11  BANK OF AMERICA, N.A.;                       ENTRY OF JUDGMENT OF
    SPECIALIZED LOAN SERVICING, LLC;            DISMISSAL AND CLOSING FILE**
12  COUNTRYWIDE FINANCIAL
    CORPORATION; TREASURY BANK,
13  N.A.; COUNTRYWIDE HOME LOANS,
    INC.; CWHEQ INC.; CERTIFICATE
14  HOLDERS OF HOME EQUITY LOAN
    ASSET BACKED CERTIFICATES, SERIES
15  2006-S8; THE BANK OF NEW YORK
    MELLON FKA THE BANK OF NEW
16  YORK; MORTGAGE ELECTRONIC
    REGISTRATION SYSTEMS, INC.; GSR
17  MORTGAGE LOAN TRUST 206-3F,
    MORTGAGE PASS-THROUGH
18  CERTIFICATES, SERIES 2006-3F; U.S.
    BANK NATIONAL ASSOCIATION, AS
19  TRUSTEE; and JOHN OR JANE DOES 1-
    11,
20
           Defendants.
21

22

23

24         BEFORE THE COURT are Defendant Specialized Loan Servicing, LLC

25  ("SLS")and U.S. Bank's Motion to Dismiss (ECF No. 19); the Bank of America

26

27

28

ORDER - 1

Defendants[1] (herein collectively referred to as "BAC Defendants") Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 37)(in which SLS and U.S. Bank join at ECF No. 39); and BAC's Motion to Strike Plaintiffs' Statement of Facts (ECF No. 43).

Plaintiffs, a Spokane attorney and his wife, are allegedly "distressed" borrowers who ceased making payments on their home loans after becoming frustrated during an unsuccessful attempt to modify the terms of their loans.  However, this lawsuit is not an attempt to contest or invalidate a pending non-judicial foreclosure.  Instead, Plaintiffs have sued nine entities who have serviced their loans or were otherwise involved in their notes or deeds of trust. Plaintiffs claim they have pursued this lawsuit to force the Defendants to "prove" to Plaintiffs "the true identity of the organization that [P]laintiffs owe money," (ECF No. 42 at 15), who has the authority to renegotiate the terms of repayment, and who has "standing to take [P]laintiffs' home in a non-judicial foreclosure action."  (ECF No. 42 at 3)  Plaintiffs' lawsuit also seeks relief far beyond this, asking the court to extinguish their contractual obligations, return loan payments made, and grant them quiet title to the real property. Plaintiffs commenced this lawsuit to "avoid being subject to multiple collection efforts" (ECF No. 42 at 3) and to prevent a foreclosure from ever occurring.

The court having reviewed the Second Amended Complaint, the parties' contentions, and the governing law, herein **GRANTS** the Defendants' Motions to Dismiss.

## I.     PRELIMINARY MATTERS

The written submissions of Plaintiffs and Defendants U.S. Bank and SLS violate Local Rule 10.1 by utilizing single-spaced footnotes typed in 10 and 12-point font.  The

---

[1] Bank of America Corp. (BAC), Bank of America N.A. ("BANA"), Countrywide Financial Corp. ("CFC"), Treasury Bank, N.A. ("Treasury Bank"), Countrywide Home Loans, Inc. ("CHLI"), CWHEQ Inc. ("CWHEQ"), CWHEQ Home Equity Loan Trust, Series 2006-S8 ("2006-S8 Trust"), and Mortgage Electronic Registration Systems, Inc ("MERS")

Rule provides that no brief should have more than an average of 280 words per page. For example only, page 9 of Plaintiffs' Response has over 400 words.   Footnotes may not be used to avoid Local Rule page limits.

Though Plaintiffs have made no request to convert the pending Motions to Dismiss into motions for summary judgment, Plaintiffs have also submitted a separate 13-page "Statement of Facts," two declarations of Keith Douglass (the first attaching over 1000 pages of exhibits), and a declaration of an attorney, Craig Barille.  The BAC Defendants have motioned the court to strike Plaintiffs' Statement of Facts, arguing it is another attempted end run around the page limitations on memoranda and an attempt to have the court consider facts beyond the pleadings.

While Rule 12(b)(1) permits consideration of evidence outside the pleadings, generally, a district court may not consider any material beyond the pleadings in ruling on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, the Ninth Circuit has carved out three exceptions to this rule. First, a court may consider material properly submitted as a part of the complaint. *Id*. Second, a court may consider documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Id.* Third, a court may take judicial notice of matters of public record. *Id.* at 689.  In resolving these pending motions to dismiss, the court need not consider any material beyond the Second Amended Complaint and within these permissible exceptions. Accordingly, Plaintiffs' additional "Statement of Facts" have not been relied upon in rendering the court's decision.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On or about May 4, 2005, the Plaintiffs obtained a $440,000 loan from Washington Trust Bank ("WTB")  to finance the purchase of a home at 2221 W. Clarke Avenue, Spokane, Washington.   The loan was secured by a promissory note (the "First Note")(ECF No. 1 at 56-58) and a Deed of Trust (the "First Deed")(ECF No. 1 at 42-55) recorded with the Spokane County Auditor.  The First Deed identifies WTB as the lender

and Transnation Title Insurance Company as the Trustee[2]. (ECF No. 1 at 42). By a document recorded on May 9, 2005, WTB executed an assignment of the First Deed of Trust in favor of "Countrywide Document Custody Services, a division of Treasury Bank, N.A. " (ECF No. 1 at 71).  The First Deed was then reassigned on November 6, 2006 to Countrywide Home Loans, Inc (CHLI).  (ECF No. 1 at 73). The Plaintiffs claim they began making monthly payments of approximately $3400 on this First Note to Defendant CHLI and then to BAC, who represented themselves as authorized servicing agents. In July 2011, Plaintiffs voluntarily ceased making payments and defaulted on the loan. (ECF No. 28 at ¶76).  The Plaintiffs admit that as of September 2012, they were $58,561.83 in arrears on the First Note.  In the fall of 2012, Plaintiffs were informed by Defendant BAC and Defendant Specialized Loan Servicing (SLS) that servicing rights for the First Note was transferred to SLS.  The Notice mailed  by SLS identified as "creditor," Defendant U.S. Bank N.A. as trustee for GSR Mortgage Loan Trust 2006-3F, Mortgage-Pass Through Certificates, Series 2006-3F.

On or about December 5, 2006, the Douglasses obtained an additional $242,900 home equity loan from CHLI signing a promissory note (the "Second Note") secured by a second Deed of Trust (the "Second Deed") on the Property.  The Second Deed lists CHLI as the lender, Mortgage Electronic Registration Systems, Inc (MERS) as the Beneficiary, and Land America Transnation as the Trustee.  (ECF No. 1 at 59-65). Plaintiffs allege that they began making monthly payments of approximately $2,042 on the Second Note, but also ceased making payments in July 2011.  (ECF No. 28 at ¶ 77). Plaintiffs admit that as of September 2012, they were $36,763.74 in arrears on the Second Note.

---

[2] A deed of trust involves a lender, a borrower, and a "trustee." The trustee holds an interest in the title to the borrower's property on behalf of the lender, who is also called the beneficiary. If a borrower defaults on his or her loan, the beneficiary may instruct the trustee to conduct a nonjudicial foreclosure instead of petitioning the court to initiate a foreclosure process.

The Second Amended Complaint states the Plaintiffs ceased making payments on either Note after unsuccessfully exploring loan modifications with BAC.   Plaintiffs allege that beginning in May 2011, "it became apparent to them that there was most probably no noteholder...and that any payments that were being made was not being made to any one who could claim to be a noteholder..."  (ECF No. 28, ¶ 71-72).

There is no allegation that any entity is presently attempting or has attempted to foreclose on the Douglass's property.

The Douglasses filed a Complaint in Spokane County (Washington) Superior Court on November 1, 2012, alleging eleven causes action against the Defendants.  On November 30, 2012, the BAC Defendants removed the action to federal court on diversity grounds and the fact that both the loan amounts and the amount of unpaid loan payments exceed the $75,000 amount in controversy requirement. Shortly thereafter, the Douglasses filed an Amended Complaint (ECF No. 7), which was followed by motions to dismiss filed by the Defendants.  While the motions to dismiss were pending, the Douglasses filed a Second Amended Complaint (SAC) along with their Response to the Motion to Dismiss.  Substantively, the 50-page SAC revises certain contentions, adds factual allegations at ¶¶ 34-37, and omits the specific claims against Defendant SLS (clams 9, 10, and 11, which SLS had moved to dismiss).

The SAC asserts the same eight claims: 1) Quiet Title to void the First Deed of Trust; 2) Quiet Title to void the Second Deed of Trust; 3) declaratory judgment declaring the First Note unenforceable; 4) declaratory judgment declaring the Second Note unenforceable; 5) fraud against Defendants CHLI, BAC and BANA; 6) violation of RCW 19.144.005 against Defendants CHLI and BAC; 7) violation of the Washington Consumer Protection Act ("CPA") against CHLI, BAC, and BANA; and 8) a claim for "vicarious liability" against BAC.  Defendants move for dismissal of each of these claims.

Plaintiffs' claims rest upon the allegation that no one in the world exists who can demonstrate they own their First and Second Notes, and therefore no trustee exists or can

be appointed who can legitimately enforce their First and Second Deeds of Trust.   They also claim their First Deed of Trust is void because the first named assignee was not a legally cognizable entity and as such, it could not make further assignment of rights under the First Deed. They claim the Second Deed of Trust was void (*ab initio*) because MERS was named as the original beneficiary, but never held the Second Note, and thus couldn't make further assignment of its rights.  Plaintiffs' fraud and state statutory claims contend their loan servicers fraudulently collected payments from them despite having known or should have known that there were no holders of the First and Second Notes.

## III.   LEGAL STANDARDS

### A. Subject Matter Jurisdiction

Where the court lacks subject-matter jurisdiction, the action must be dismissed. Fed.R.Civ.P. 12(b)(1). A challenge to standing is appropriately raised pursuant to Fed.R.Civ.P. 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The party who seeks to invoke the subject-matter jurisdiction of the court has the burden of establishing that such jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In such instances, the court may hear evidence regarding subject-matter jurisdiction and resolve factual disputes where necessary; however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the [court] from evaluating for itself the merits of jurisdictional claims." *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

### B. Failure to State a Claim

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The Court must also assume that "general allegations embrace those specific facts that are necessary to support a claim." *Smith v. Pacific Props. & Dev. Corp.*, 358 F.3d 1097, 1106 (9th Cir. 2004). Rule 8(a)(2) "requires only 'a short and

plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant a fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. *Id.* However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (*quoting Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 1216 (3d ed.2004) (stating that the pleading must contain something more than a "statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) ... requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n. 3 (internal citations and quotations omitted). "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. If the "plaintiffs ... have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue

delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment...." *Foman v. Davis*, 371 U.S. 178,182 (1962). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment ." *Intri–Plex Techs., Inc. v. Crest Group, Inc*., 499 F.3d 1048, 1056 (9th Cir. 2007) (internal citations and quotations omitted).

**IV.   Analysis**

**A.   Claims for Declaratory Judgment (Claims 1-4)**

Though Plaintiffs plead their first two causes of action pertaining to the Deeds of Trust as both "declaratory relief" and "quiet title" claims, they are in substance declaratory judgment claims premised entirely on the First and Second Deeds of trust being declared void.  Plaintiffs' third and fourth claims likewise seek declaratory relief seeking nullification of the First and Second Notes.  Plaintiffs' first four causes of action seek declarations from the court on numerous topics related to who has/had what rights on the underlying notes and deeds of trust.  In seeking declaratory relief, it is Plaintiffs' alleged desire to "settle and afford [Plaintiffs] relief from uncertainty and insecurity with respect to rights, status and other legal relations between Plaintiffs...and Defendants..." (ECF No. 28 at ¶ 98).  Ultimately, however, the relief sought in the SAC far exceeds this request in that it asks the court to declare both Notes and both Deeds of Trust void, without Plaintiffs having first fully satisfied their payment obligations.

In a diversity action involving state law claims, the availability of a particular remedy will generally be determined by substantive state law. The matter is different in declaratory judgment actions, however, because, in addition to the underlying merits of the substantive state question, the availability of the remedy turns on whether the plaintiff has Article III standing to seek declaratory relief.  Indeed,"a plaintiff must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

1

Because declaratory judgment acts are procedural in nature and do not affect underlying substantive rights, the Erie doctrine, *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), mandates that federal courts sitting in diversity apply federal procedural law, i.e. the Declaratory Judgment Act, 28 U.S.C. § 2201, to Plaintiffs' request for declaratory relief (originally pleaded based on state law).  That Act provides a federal court with discretionary jurisdiction to hear declaratory judgment actions. *Gov't Employees Ins. Co. V. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998). The Act states that, "In a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201.  This is an incorporation of the Article III constitutional case or controversy requirement.  *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005).

For there to be a case or controversy under Article III, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," "real and substantial," and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)(*quoting Aetna Life Ins Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). Although there is no bright line test, the basic standard is whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*.

"One element of the case-or-controversy requirement" is that Plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To establish Article III standing, a Plaintiff must establish an invasion of a legally protected interest which must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 130 S.Ct. 2743, 2752 (2010).

ORDER - 9

Plaintiffs have not alleged an imminent injury traceable to the Defendants, nor is the controversy in this case of sufficient immediacy to warrant declaratory relief. There is no allegation in the SAC that any of the Defendants have begun or threatened to initiate foreclosure proceedings. The SAC merely alleges that in November 2012 their loan servicer, Defendant SLS, sent them a notice which "implied that if the payment was not made...SLS had the authority to pursue non-judicial foreclosure..." (ECF No. 28 at ¶ 96). Indeed, Plaintiffs complain that for years, no trustees have been appointed who might be able to initiate non-judicial foreclosure on their Property. However, in their Response brief, Plaintiffs make the assertion that the failure of two lenders to provide them with "proof" of who holds their two notes has "resulted in foreclosure initiation." (ECF No. 42 at 2). Further on in their brief they contend that foreclosure is only "threatened" because they received from Defendant SLS, a "Notice of Default and Intent to Foreclose" on the First Note and First Deed of Trust. (ECF No. 42 at 4). But this Notice (referenced in the SAC at ¶ 92-94), attached to Plaintiffs' Response, is nothing more than a "Notice of Debt" informing Plaintiffs that the servicing rights for their First Deed of Trust were transferred to SLS.

Although, as Plaintiffs point out, at some point, it is possible someone might commence foreclosure proceedings against Plaintiffs, there is no evidence that any of the Defendants have done so yet, and there is no allegation showing that foreclosure proceedings are imminent. The claimed "threat of numerous foreclosure actions from entities who may or may not have authority to foreclose" (ECF No. 42 at 3) is speculative as they are future events that may never occur. The request that the court determine the legal rights of the parties in order to preclude anyone from initiating foreclosure proceedings is in actuality a request for an advisory opinion, which the court may not give. Plaintiffs' allegations are insufficient to show there exists a substantial controversy of sufficient immediacy to warrant declaratory relief.

Given Plaintiffs' lack of Article III standing and the tremendous amount written on these subjects by other courts (many of which are cited to in the briefs), the court need

not write at length on the fact that Plaintiffs' underlying theories are not independent causes of action and lack legal authority.   First, to the extent Plaintiffs claim their notes are invalid because no Defendant can produce the original notes, a discredited serially advanced theory known as the "show me the note" theory, the Washington Deed of Trust Act does not require that a mortgage servicer or mortgagee produce the original note to the borrower on demand or prior to foreclosure.  Rather, Washington law requires that the foreclosing lender demonstrate proof of beneficial ownership of the underlying note to the *trustee.* RCW 61.24.030(7)(a)*; Bain v. Metr. Mortg. Group, Inc.,* 175 Wash.2d 83 (2012)*.* Second, Plaintiffs' contention that separation of the Notes from their Deeds of Trust render the Notes unenforceable or excuses them from payment is contrary to *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1044 (9th Cir.2011)(rejecting the "separation of the note" theory).  Third, there is no authority which provides that the failure to appoint a successor trustee on the deeds is a basis for extinguishing the instrument.  Indeed, RCW 61.24.010(2) sets out a process for appointing a replacement or successor trustee.  Fourth, there is ample authority that borrowers, as third parties to the assignment of their mortgage (and securitization process), can not mount a challenge to the chain of assignments unless a borrower has a genuine claim that they are at risk of paying the same debt twice if the assignment stands. Finally, the Washington Supreme Court case *Bain,*  does not stand for the proposition that naming MERS as a beneficiary on a Deed of Trust voids the deed or invalidates a lender's entitlement to repayment on the loan.  The *Bain* Court specifically stated that it "tended to agree" that a violation of the Deed of Trust Act "should not result in a void deed of trust." *Bain*, 175 Wash.2d 83, 113 (2012).

**B.    Fraud (Claim 5)**

Plaintiffs' fifth claim alleges fraud and challenges BAC and CHLI's collection of payments that Plaintiffs admit they agreed to make under the Notes. Plaintiffs repeatedly allege that Defendants CHLI and BAC were the servicers of their relevant loans (¶¶76-77, 82-85, 91).

Under Washington law, a fraud claim requires proof of nine separate elements: (1) a representation of an existing fact; (2) materiality of this representation; (3) falsity of the representation; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) intent that the representation be acted on; (6) ignorance of its falsity by the person to whom the representation is made; (7) reliance on the truth of the representation; (8) a right to rely on the representation; and (9) consequential damages. *Kirkham v. Smith*, 106 Wash.App. 177, 23 P.3d 10, 13 (Wash.Ct.App. 2001). Under Federal Rule of Civil Procedure 9(b), a Plaintiff alleging fraud must "state with particularity the circumstances constituting fraud," and the allegations must be "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." Averments of fraud must be accompanied by "the who, what, when, where, and how of the misconduct charged." *Viss v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003). The plaintiff also must set forth "what is false or misleading about a statement, and why it is false," *id*., and must state the factual basis for their belief, even with regard to matters within the defendant's knowledge. *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

Plaintiffs' fraud allegations are built upon their requests for declaratory relief (discussed above) that: 1) "[f]or the majority of the time since the notes were executed, there were no holders of the First Note or Second Note" (¶ 178); 2) "[t]he purported assignment of the notes and trust deeds was not effective" (¶ 128(I)); and 3) "[f]or the majority of the time since the notes were executed, the obligations were unenforceable" (¶ 128(j)).    The SAC alleges that CHLI and BAC committed acts of fraud when, despite "knowledge of these facts," (¶ 128(m)), they collected Plaintiffs' payments while representing to Plaintiffs that they were authorized agents of note holders (¶ 175),  when note holders were in fact non-existent.  The SAC makes then makes the blanket assertions that Plaintiffs "did justifiably rely on the representations," (¶ 189) "were damaged thereby," (¶ 189) and thus are "entitled to the return of all fraudulently collected payments." (¶ 190).

Looking beyond the fact that Plaintiffs' cause of action rests upon legal conclusions this court is unable to make, Plaintiffs' SAC fails to plead allegations of fraud with the required particularity. The SAC sets forth no facts which call into question CHLI and BAC's status as servicers of the Notes.  There are no particular pleaded facts as to the alleged "falsity" of the representation that they were authorized servicers, i.e. what allegedly made CHLI and BAC improper servicers.  Indeed, Plaintiffs have not provided any legal authority for the proposition that a loan servicer must be a holder or must be in possession of or able to produce the Promissory Note to lawfully collect loan payments.  Nothing in *Bain v. Metr. Mortg. Group, Inc*., 175 Wash.2d 83 (2012) requires them to do so.  That the Plaintiffs were unable to modify their loans or obtain what they considered adequate "proof" as to who the holder is or was, has no bearing upon the Plaintiffs' promise to make specific monthly payments and someone's right to collect that payment. The SAC also sets forth no basis for the contention that CHLI and BAC had knowledge of the alleged ineffective securitization of the Notes.

Furthermore, Plaintiffs have failed to adequately plead how they were damaged by making the loan payments, that they promised to pay, to CHLI and BAC.  Plaintiffs do not contend that someone else, other than CHLI and BAC, has sought to collect the payments.  Nor is there any allegation that CHLI or BAC improperly retained any payments.  Plaintiffs assert they were damaged because BAC and CHLI sent their payments to "unauthorized parties."  (¶ 183) If true, the party entitled to those payments-- not Plaintiffs– might have a claim against BAC or CHLI.  Plaintiffs also claim they have been damaged because they "had to cease making payments at all because of the unknown identity of the true note holders," and it caused their "credit rating to suffer." (ECF No. 28 at ¶ 183).  Any injury to Plaintiffs' credit rating is a consequence of their decision to cease making payments, and is not traceable to any alleged fraud on the part of the Defendants.

**C.    Washington's Mortgage Lending and Homeownership Act (Claim 6)**

The court also finds that Plaintiffs are unable to assert a cause of action under

RCW 19.144.080, a provision of Washington's Mortgage Lending and Homeownership Act, which makes it unlawful for "any person in connection with making, brokering, obtaining, or modifying a residential mortgage loan" to "defraud or materially mislead a borrower during the lending process."   The statute provides for criminal and civil penalties, but does not provide a private right of action under this provision.  *See* RCW 19.144.120 (The director of the Department of Financial Institutions "may...enforce, investigate, or examine persons covered by this chapter.").

**D.     Washington Consumer Protection Act (Claim 7)**

Plaintiffs also allege that Defendants CHLI, BAC and BANA have violated Washington's Consumer Protection Act (CPA), RCW 19.86.093.  To prevail on a CPA claim, a plaintiff must establish five distinct elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780 (1986). Whether a practice is unfair or deceptive is a question of law for the court to decide if the parties do not dispute their conduct. *Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*, 162 Wash.2d 59, 74 (2007). To satisfy the first element, Plaintiffs must show that the act or practice either has a capacity to deceive a substantial portion of the public or that it constitutes an unfair trade or practice.  In order to prove causation, the "plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury."

The SAC contains nothing but blanket conclusory assertions of entitlement to relief as to their claim under the CPA.  However, Plaintiffs' Response contends that their CPA claim, like their fraud claims, is based upon their contention the Defendants were deceptive in representing their authority to act on behalf of a beneficiary, when they have no "proof that they hold the original First (or Second) Note." (ECF No. 42 at 15-16). Plaintiffs' Response brief claims their asserted injury is that they were unable to deal with or negotiate a modification with the holders of their First and Second Notes.

ORDER - 14

Plaintiffs seem to attempt to place themselves into the hypothetical circumstances theorized in *Bain,* when the Washington Supreme Court stated: "if there have been misrepresentations, fraud, or irregularities in the proceedings, and if the homeowner borrower cannot locate the party accountable and with authority to correct the irregularity, there certainly could be injury under the CPA." 175 Wash.2d. at 51.  There are no facts contained within the SAC concerning the Plaintiffs' alleged attempts to modify their loans with Defendants, nor does the SAC contend that Plaintiffs were unable to negotiate due to their inability to *identify* the holders, nor identify how Defendants stymied their efforts to modify their loans, nor identify any alleged basis for a need to deal with the holder of the notes, as opposed to their agents.  Indeed, Plaintiffs Response admits that they were able to negotiate with Defendants, but for reasons entirely unknown to the court they were unsuccessful.  Plaintiffs cannot assert a CPA injury based upon the failure of Defendants to "prove" to them legitimate holders exist by showing them the original notes.  Plaintiffs have failed to plead a valid basis for a claim under the Washington Consumer Protection Act.

**E.    Vicarious Liability -Bac (Claim 8)**

The  court concludes by considering Plaintiffs' claim for "vicarious liability" against BAC for the acts of five other named Defendants, who are alleged subsidiaries of BAC (BANA, CHLI, CFC, Treasury Bank, and CWHEQ).   There is no cognizable claim for "vicarious liability" in the absence of an actionable claim against a Defendant. Accordingly, this claim will likewise be dismissed.

**V.    CONCLUSION**

This case presents claims which, though raised here in a post-*Bain* setting, have been repeatedly raised by borrowers and are not of first impression.  *See e.g., Wilson v. Bank of Am.*, 2013 WL 275018 (W.D.Wash. Jan. 24, 2013); *Bisson v. Bank of Am., N.A.*, 2013 WL 325262 (W.D.Wash. Jan. 15, 2013). There is no question that today's complex system of mortgage transactions is difficult, and at times baffling, for borrowers to navigate.  While this court would like to believe that Plaintiffs are seeking to do the right

ORDER - 15

thing, but are confused about what the right thing is, their positions pursued in the SAC in attempting to void the Notes and Deeds of Trust for money received by them are extreme.  The court has limited authority to grant relief and the SAC fails to satisfy the pleading requirements of Fed.R.Civ.P. 12(b)(1), 9(b), and 12(b)(6).

For the foregoing reasons, Defendants' Motions to Dismiss (**ECF No. 19, 37**) are **GRANTED**.  Defendants' Motion to Strike (**ECF No. 43**) is **GRANTED**. The Clerk of the Court shall administratively terminate the pending motion at **ECF No. 11**, the BAC Defendants initially filed motion which is now **MOOT**.  As there are no remaining claims against the non-moving named Defendants and because amendment would be futile, the Clerk of the Court shall enter **JUDGMENT OF DISMISSAL** dismissing Plaintiff's Second Amended Complaint and the claims therein without leave to amend and without prejudice.

**IT IS SO ORDERED**.  The Clerk is hereby directed to enter this Order and enter Judgment as directed above, furnish copies to counsel, and **CLOSE THE FILE**.

**DATED** this 21st day of May, 2013.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE